# Exhibit B




# PURCHASE ORDER TERMS AND CONDITIONS

Effective Date: January 1, 2014

## 1. OFFER AND ACCEPTANCE AND TERMS OF ORDER

(a) Each purchase order and purchase order revision ("this Order") issued by Buyer is an offer to Seller for the purchase of goods and/or services, and includes and is governed by the express terms contained on the face of this Order, these purchase order terms and conditions, and the terms contained in any addendum or supplement to this Order, any supplier manual provided by Buyer to Seller, and other document incorporated by reference in this Order or in these purchase order terms and conditions (collectively, the "Terms"). The first occurring expression of acceptance of this Order by Seller, including Seller's (i) written acceptance, (ii) commencement of work on the goods subject to this Order (the "Goods"), (iii) shipment of the Goods, (iv) commencement of performance of all or any portion of the services subject to this Order (the "Services"), (v) failure to object to this Order, in writing, within ten (10) days of receipt of this Order, and (vi) conduct that indicates Seller's acceptance, including preparation for Seller's performance, shall constitute an acceptance of Buyer's offer. If Seller objects, Seller's objections are deemed waived if Seller subsequently commences work on the Goods, or upon shipment of the Goods or performance of the Services without an express written modification made by Buyer as provided for in paragraph 36. Any acceptance of this Order is limited to and conditional upon Seller's acceptance of the Terms. Any proposal for additional or different terms or any attempt by Seller to vary any of the Terms, whether in Seller's quotation form, acknowledgement form, invoice, correspondence or otherwise, shall be deemed material and is hereby objected to and rejected by Buyer, but any such proposal or attempted variance shall not operate as a rejection of this Order if Seller accepts Buyer's offer by commencement of work, shipment of the Goods or performance of the Services, or by other means acceptable to Buyer, in which case this Order shall be deemed accepted by Seller without any additional or different terms or variations whatsoever. This Order does not constitute an acceptance of any prior offer or proposal by Seller, and any reference in this Order to any such prior offer or proposal is solely to incorporate the description or specifications of the Goods and the Services in such offer or proposal, but only to the extent that such description or specifications are not directly in conflict with the description and specifications in this Order. If this Order is found to be an acceptance of any prior offer or proposal by Seller, such acceptance shall be limited to the Terms. Any additional or different terms in such prior offer or proposal shall be deemed material and are hereby objected to and rejected by Buyer. Buyer may cancel all or any part of this Order at any time prior to Buyer's actual knowledge of acceptance by Seller.

(b) This Order contains the entire agreement between Buyer and Seller and, except as otherwise expressly stated in this Order, supersedes all prior agreements, orders, quotations, proposals and other communications relating to the subject matter hereof and there are no other understandings or agreements, verbal or otherwise, in relation hereto that exist between Buyer and Seller. Earlier agreements signed by authorized representatives of Buyer relating to the Goods or Services, such as an award or source letter or statement of work (but not including prior purchase orders revised by this Order), will continue to apply after this Order has been issued.

(c) In the event of any conflict between the face of this Order and these purchase order terms and conditions, the face of this Order shall govern.

## 2. TIME PERIOD OF ORDER

(a) Subject to Buyer's termination rights, including, without limitation, such rights set out in paragraphs 24, 25 and 26 ("Buyer's Termination Rights"), this Order is binding on Buyer and Seller for the length of the production life of the applicable original equipment manufacturer ("OEM") vehicle program for which Buyer intends to incorporate the Goods or Services; provided, however, Seller's obligation with respect to service and replacement parts in paragraph 28 shall survive termination or expiration of this Order. Seller acknowledges and assumes the risk of the vehicle program production life being cancelled or extended by the OEM. Notwithstanding the foregoing, if an expiration date or time period is specified in this Order, this

Order is binding until such expiration date or end of such time period, subject to Buyer's Termination Rights.

(b) If the Goods or Services are not directly or indirectly associated with a specific OEM vehicle program production life, then, subject to Buyer's Termination Rights, this Order is binding on Buyer and Seller for one (1) year from the date this Order is transmitted to Seller and will automatically renew for successive one (1) year periods after the initial term, unless Seller provides written notice to Buyer, no less than one hundred and eighty (180) days prior to the end of the current term, of Seller's desire that this Order not be renewed, provided that, Buyer may extend the term of this Order for such period of time beyond the initial or current term as Buyer determines is necessary, acting reasonably and in good faith, to procure an alternate source of supply for the Goods or the Services that is acceptable to Buyer and to ensure an orderly transition of supply.

**3. CUSTOMER REQUIREMENTS**

(a) Where the Goods or Services under this Order are or will be sold, or incorporated into goods or services that are or will be sold, by Buyer to an original equipment manufacturer of vehicles, whether directly or indirectly through an upper tier supplier, or any other third party customer (collectively, the "Customer"), Seller shall take such steps, provide such disclosure, comply with such requirements and do all other things as Buyer deems necessary or desirable and within Seller's control to enable Buyer to meet Buyer's obligations under the terms and conditions of any contract or purchase order or other document (the "Customer Terms") that may be applicable to Buyer from time to time in respect of its direct or indirect supply of such goods or services to the Customer, including: delivery, packaging and labeling requirements; warranties and warranty periods; intellectual property rights and indemnification; confidentiality; access to facilities and records; and replacement and service parts. Buyer may, from time to time, in its sole discretion, provide Seller with information regarding the applicable Customer Terms, but, in any event, Seller shall be responsible for ascertaining the Customer Terms that may affect Seller's obligations hereunder and hereby agrees to be bound to such Customer Terms.

(b) If there is any conflict between the provisions of the Customer Terms and any provisions of this Order, Buyer shall have the right to have the provisions of the Customer Terms prevail to the extent necessary or desirable to resolve such conflict.

(c) In the event that the Customer directly suffers an Insolvency Event (as such term is defined in subparagraph 26(a)) and, in the course of any proceedings relating to such Insolvency Event and in connection with actual or threatened termination by the Customer of its contract(s) with Buyer (by rejection or otherwise), Buyer permits a reduction in the prices paid to Buyer for products incorporating the Goods and/or the Services, then the prices paid to Seller for the Goods and/or the Services from and after the date of such reduction will be automatically adjusted proportionally by the same percentage as the price paid to Buyer by the Customer, and this Order will otherwise remain in effect without modification.

(d) In the event Customer fails to pay Buyer for products incorporating the Goods and/or Services supplied by Seller, Buyer reserves the right to assign Seller the right to collect such amounts from the Customer, in whole or in part, and Seller agrees to accept such assignment as payment for any invoices due from Buyer to Seller on a dollar for dollar basis.

(e) In addition to any other rights or remedies provided for in this Order, if the Customer directed, recommended or requested that Seller be the source from whom Buyer is to obtain the Goods and/or the Services: (i) Buyer will pay Seller for the Goods and/or Services only after and to the extent of, and in proportion to, Buyer's actual receipt of payment from the Customer for those goods into which the Goods and/or the Services are incorporated; (ii) any lengthening of the Customer's payment terms to Buyer for those goods into which the Goods and/or Services are incorporated will automatically lengthen the payment terms as between Buyer and Seller by the same amount of time; and (iii) within three (3) business days of any change in price, specifications or other terms negotiated or proposed between Seller and the Customer, Seller shall notify Buyer in writing and immediately adjust its invoices to reflect any price reduction, provided that no change will be binding on Buyer without Buyer's specific written consent.

**4. LABELING, PACKING AND SHIPMENT**

(a) The Goods are to be suitably prepared for shipment and must be labeled, packed and shipped as required by law and in accordance with Buyer's specifications, as specified in this Order and/or in any written directions and/or instructions as may be provided by Buyer to Seller from time to time. If the Goods are not

shipped in accordance with Buyer's specifications, Seller shall pay or reimburse Buyer for any excess costs occasioned thereby.

(b) Unless otherwise expressly stated in this Order, Seller shall not charge Buyer for labeling, packing, boxing or crating.

**5. DELIVERY AND PRODUCTION VOLUMES**

(a) Time is of the essence of this Order. Seller shall deliver the Goods in the quantities and on the delivery dates and times specified in this Order. Seller shall immediately notify Buyer in writing if Seller is unable to deliver the Goods in the quantities and on the delivery dates and times specified in this Order. Goods delivered in excess of the quantities or in advance of delivery dates or times specified in this Order shall be at Seller's risk and may be returned to Seller by Buyer, and all transportation charges both to and from the original destination shall be paid by Seller. Buyer shall not be required to make payment for any Goods delivered to Buyer that are in excess of the quantities specified in this Order. Unless otherwise expressly stated in this Order or authorized in writing by Buyer, Seller shall not make any commitments for raw materials or other inventory or manufacture any Goods in advance of the time necessary to permit shipments on the delivery dates. Buyer may on notice to Seller change the rate of scheduled shipments or direct temporary suspension of scheduled shipments, neither of which shall entitle Seller to a modification of the price of the Goods or the Services covered by this Order.

(b) If the face of this Order does not specify the quantities, or specifies the quantities as "blanket order", "as released", "as scheduled", "as directed", "subject to Buyer's production releases" or in another similar fashion, then, in consideration for ten U.S. dollars (U.S.$10.00), the payment of which shall be made by Buyer upon the termination or non-renewal of this Order, Seller grants to Buyer an irrevocable option during the term of this Order to purchase the Goods in such quantities and on such delivery dates and times as indicated in the firm delivery or shipping releases, authorizations, manifests, broadcasts or similar written instructions issued or transmitted by Buyer to Seller from time to time in reference to this Order (each a "Release"), and Seller shall deliver such quantities on such dates and times, at the price and on the other terms specified in this Order; provided that Buyer shall purchase no less than one piece or unit of each of the Goods or the Services and no more than one hundred percent (100%) of Buyer's requirements for the Goods or the Services, as applicable. All references herein to "this Order" shall include any Releases.

(c) Seller warrants that any representation made in a quote or otherwise regarding its production capacity shall be considered a warranty that Seller can manufacture or produce the stated quantity of the Goods or the Services without the imposition of overtime charges or other surcharges. Seller acknowledges that any estimates or forecasts of production volumes or length of program, whether from Buyer or the Customer, are subject to change from time to time, with or without notice to Seller, and shall not be binding upon Buyer. Unless otherwise expressly stated in this Order, Buyer makes no representation, warranty, guarantee or commitment of any kind or nature, whether express or implied to Seller in respect of Buyer's quantitative requirements for the Goods or the Services or the term of supply of the Goods or the Services.

(d) Unless otherwise expressly stated in this Order, Buyer shall not be required to purchase the Goods or the Services exclusively from Seller.

**6. DELAYS IN DELIVERY OR ACCEPTANCE**

(a) If Seller fails or refuses to proceed with this Order or fails to deliver the Goods or perform the Services within the delivery dates and times specified in this Order, Buyer may, without limiting or affecting its other rights or remedies available hereunder or at law, cancel the then remaining balance of this Order, unless the delay is an excusable delay (as defined in subparagraph 6(b)). In addition, if Seller fails to meet the delivery dates or times of the Goods, other than by reason of an excusable delay, Buyer may, without limiting or affecting its other rights or remedies available hereunder or at law, direct expedited shipment and/or incur premium freight or transportation costs, and Seller shall pay upon demand all excess costs incurred thereby, including additional handling charges and other expenses (whether related or not) resulting therefrom. Seller shall be responsible for all other direct, consequential, and incidental damages incurred by Buyer as a result of Seller's failure to meet the delivery dates or times, other than by reason of an excusable delay, including the cost of any line shutdown and the cost of obtaining goods from an alternate source. Buyer's actions in obtaining substitute or replacement products shall not limit the rights and remedies available hereunder or at law.

(b) The term "excusable delay" means any delay in making or accepting deliveries or performance which results without fault or negligence on the part of the party involved and which is due to causes beyond its reasonable control, such as acts of God or of a public enemy, any preference, priority or allocation order issued by government or any other act of government, fires, floods, epidemics, quarantine restrictions, freight embargoes, unusually severe weather, explosions, riots, war, terrorism and delays of a supplier due to such causes. The term "excusable delay" shall not, however, mean or include any delay arising from or as a result of: (i) Seller's financial difficulties; (ii) a change in cost or availability of materials or components based on market conditions or supplier actions affecting Seller; or (iii) any labor strike or other labor disruption applicable to Seller or to any of its subcontractors or suppliers that are engaged in manufacturing or providing goods or services to Seller in connection with Seller's obligations under this Order.

(c) An excusable delay shall not constitute a default hereunder, provided that if Seller is subject to one or more excusable delays that persist for more than thirty (30) days in the aggregate, Buyer may cancel the then remaining balance of this Order, without limiting or otherwise affecting its other rights or remedies available hereunder or at law.

(d) Seller, at its expense, shall use its best efforts to mitigate any adverse effects or costs to Buyer due to any actual or potential delay, including: (i) the implementation of a production contingency plan; and (ii) upon Buyer's express written authorization, increasing Seller's inventory of finished Goods to a level sufficient to sustain deliveries during such delay.

(e) Whenever any actual or potential delay threatens to delay deliveries or Seller's performance under this Order, Seller shall immediately give written notice thereof to Buyer. Such notice shall include all relevant information with respect to such delay, including the anticipated duration and impact of such delay. In addition, Seller will notify Buyer in writing: (i) at least sixty (60) days prior to the expiration of any labor contract or collective agreement; and (ii) as soon as Seller becomes aware of any actual or threatened labor strike or other labor disruption; in each case as may be applicable to Seller or to any of its subcontractors or suppliers that are engaged in manufacturing or providing goods or services to Seller in connection with Seller's obligations under this Order.

(f) Buyer may delay acceptance of delivery of the Goods or performance of the Services by reason of an excusable delay, in which case Seller shall hold the Goods and/or delay performance of the Services, at Buyer's direction, until the cause of the excusable delay has been removed.

(g) If, under the terms of this Order, Buyer grants Seller exclusive or "single source" rights to supply the Goods or the Services to Buyer, such rights shall not restrict Buyer's right to procure goods or services similar to the Goods or the Services in substitution therefor in the event of any delay.

(h) Without limiting Seller's obligations hereunder, in the event of any supply allocation by Seller, including as a result of an excusable delay, Seller shall give preference to Buyer for all of the Goods and the Services ordered under this Order.

**7. TRANSPORTATION CHARGES, CUSTOMS DUTIES AND TAXES**

(a) Unless otherwise expressly stated in this Order, all Goods shall be delivered by Seller "DDP - Buyer's plant" (as defined in Incoterms 2010), in which case: (i) all transportation charges (including terminal switching charges) shall be at Seller's expense; and (ii) Buyer shall not be liable for any insurance, storage, parking or detention charges.

(b) Unless otherwise expressly stated in this Order, prices include customs duties and expenses, tariffs and all federal, provincial, state and local taxes (including all import taxes, excise taxes and sales taxes) applicable to the manufacture, sale or provision of the Goods or the Services.

(c) Any reduction in Seller's cost resulting from a reduction in transportation charges, customs duties, import taxes, excise taxes and/or sales taxes from those in effect on the date of this Order shall be paid to Buyer by Seller as a reduction of the price.

**8. CUSTOMS DRAWBACK DOCUMENTS AND EXPORT CONTROLS**

(a) Seller agrees to fulfill any customs' related obligations, including properly declaring the value of the Goods and complying with the appropriate origin or labeling requirements. Upon request, Seller shall promptly furnish to Buyer all documents and other information required for customs drawback purposes, properly completed in accordance with applicable governmental regulations. Unless otherwise expressly stated in this Order, all customs drawback shall be reserved and retained for, or credited to, Buyer.

(b) Export licenses or authorizations necessary for the export of the Goods shall be the responsibility of Seller unless otherwise expressly stated in this Order, in which case Seller shall provide such information as may be necessary to enable Buyer to obtain such licenses or authorizations. Seller shall undertake such arrangements as necessary for the Goods to be covered by any duty deferral or free trade zone programs of the country of import.

(c) To the extent that any Goods covered by this Order are to be imported into the United States of America, Seller shall, upon Buyer's request, comply with all applicable recommendations or requirements of the United States Bureau of Customs and Border Protection's Customs-Trade Partnership Against Terrorism initiative or any successor or replacement initiative or program. To the extent that any Goods covered by this Order are to be imported into Canada, Seller shall, upon Buyer's request, participate in the Canada Border Services Agency's Partners in Protection program or any successor or replacement initiative or program. Upon request, Seller shall certify in writing its compliance with the foregoing. Seller shall indemnify and hold Buyer harmless from and against all liabilities, demands, claims, losses, costs, damages and expenses of any nature or kind (including legal and other professional fees) arising from or relating to Seller's non-compliance with the foregoing.

**9. CERTIFICATES OF ORIGIN**

Upon request, Seller shall promptly furnish to Buyer all certificates of origin or domestic value-added and all other information relating to the costs and places of origin of the Goods or the Services and the materials contained therein or used in the performance thereof, as may be required by Buyer to comply fully with all customs, tariffs and other applicable governmental regulations including those customs, tariffs, and regulations that enable Buyer to claim preferential duty treatment at the time of entry of the Goods and related tooling and equipment. Seller shall make all necessary arrangements for said Goods to be eligible for and certified by any applicable duty deferral or free trade program(s) of the country of import. Seller shall indemnify and hold Buyer, its subsidiaries and affiliates, their respective successors, assigns, representatives, employees and agents, and the Customer harmless from and against all liabilities, demands, claims, losses, costs, damages and expenses of any nature or kind (including fines and penalties) arising from or as a result of: (i) Seller's delay in furnishing such certificates or other information to Buyer; (ii) any errors or omissions contained in such certificates; and (iii) any non-compliance by Seller with such regulations.

**10. PAYMENT**

(a) Except as otherwise expressly stated in this Order, and subject to subparagraphs 3(c), (d) and (e), Buyer shall pay net invoices (subject to applicable withholding taxes, if any) by the later of: (i) sixty (60) days after the end of the month during which the Goods were delivered and/or the Services performed, as the case may be; or (ii) sixty (60) days after the invoice date.

(b) Notwithstanding the foregoing, where Buyer is entitled to receive reimbursement or other payment from the Customer for the Goods and/or the Services to be provided by Seller to Buyer under this Order that constitute Tooling (as such term is defined in subparagraph 17(b)), Seller shall be entitled to receive payment under this Order for such Tooling only after and to the extent of, and in proportion to, Buyer's actual receipt of such reimbursement or other payment from the Customer.

**11. SET-OFF, RECOUPMENT**

In addition to any right of set-off or recoupment provided by law, all amounts due to Seller and its subsidiaries and affiliates shall be considered net of indebtedness or obligations of Seller and its subsidiaries and affiliates to Buyer and its subsidiaries and affiliates, and Buyer and its subsidiaries and affiliates may set-off against or recoup from any amounts due or to become due from Seller and its subsidiaries and affiliates to Buyer and its subsidiaries and affiliates however and whenever arising. Buyer may do so without notice to Seller or its subsidiaries or affiliates. If any obligations of Seller or its subsidiaries or affiliates to Buyer or its subsidiaries or affiliates are disputed, contingent or unliquidated, including Customer warranty claims made before final determination of cause, Buyer may defer payment of amounts due until such obligations are resolved.

**12. CHANGES**

(a) Buyer reserves the right to make changes, or to cause Seller to make changes, to the drawings, specifications, sub-suppliers, sub-contractors, and other provisions of this Order. If any such change results in an increase or a decrease in the cost of, or the time required for, manufacturing or delivering the Goods or performing the Services, an equitable adjustment may be made in the price or delivery schedule, or both,

and this Order shall, subject to the agreement of Buyer and Seller, be modified in writing accordingly. No claim under this paragraph 12 shall be asserted by Seller after fourteen (14) days following the notification of the change by Buyer.

(b) Seller shall not, without Buyer's prior written authorization, make any changes to specifications, designs, materials or part numbers (or other types of identification), any major changes in processes or procedures, or any changes in the location of the facilities used by Seller for the performance of its obligations under this Order.

**13. PRICE WARRANTIES AND COMPETITIVENESS**

(a) Seller warrants that the prices for the Goods and the Services are, and shall ensure that such prices remain, not less favorable to Buyer than the prices currently extended to any other customer of Seller for the same or substantially similar goods or services in the same or substantially similar quantities and delivery requirements. If Seller reduces the prices of such same or substantially similar goods or services during the term of this Order, Seller shall reduce the prices of the Goods and the Services correspondingly.

(b) Seller warrants that the prices in this Order shall be complete, and no surcharges, premiums or other additional charges of any type shall be added, without Buyer's prior written consent. Seller expressly assumes the risk of any event or cause (whether or not foreseen) affecting such prices, including any foreign exchange rate changes, increases in raw materials costs, inflation, increases in labor and other manufacturing costs.

(c) Seller shall ensure that the Goods and the Services remain competitive, in terms of price, technology and quality, with substantially similar goods and services available to Buyer from other suppliers.

**14. WARRANTIES REGARDING THE GOODS AND THE SERVICES**

(a) Seller expressly warrants that the Goods and the Services, including any special tools, dies, jigs, fixtures, patterns, machinery and equipment, that are obtained at Buyer's expense for the performance of this Order and/or are or become the property of Buyer (including the Buyer's Property, as such term is defined in subparagraph 17(b)) shall: (i) conform to all drawings, specifications, samples and other descriptions furnished, specified or adopted by Buyer; (ii) comply with all applicable laws, regulations, rules, codes and standards of the jurisdictions in which the Goods or the Services, and the products containing the Goods and Services, are to be sold; (iii) be merchantable; (iv) be free from any defects in design, to the extent furnished by Seller or any of its subcontractors or suppliers, even if the design has been approved by Buyer; (v) be free from any defects in materials and workmanship; (vi) be fit, sufficient and suitable for the particular purpose for which Buyer intends to use the Goods or the Services, including the specified performance in the component, system, subsystem and vehicle location and the environment in which they are or may reasonably be expected to perform; and (vii) be free of all liens, claims and encumbrances whatsoever. For the purposes of clause (vi) above, Seller acknowledges that Seller knows the particular purpose for which Buyer intends to use the Goods or the Services. Seller further expressly warrants that, unless otherwise expressly stated in this Order, the Goods are manufactured entirely with new materials and none of the Goods is, in whole or any part, governmental or commercial surplus or used, remanufactured, reconditioned or of such age or condition so as to impair its fitness, usefulness or safety. The warranties in this subparagraph 14(a) are referred to in this Order as the "Seller's Warranties".

(b) The Seller's Warranties are available to, and for the benefit of, Buyer, its subsidiaries and affiliates, their respective successors and assigns, the Customer and users of products containing the Goods or the Services. The Seller's Warranties shall extend to future performance of the Goods. The warranty period shall be that provided by applicable law, except that if Buyer is obligated to provide a longer warranty period to the Customer pursuant to the Customer Terms, such longer period shall apply. The Seller's Warranties shall be in addition to all other warranties available under applicable law.

(c) Seller shall indemnify and hold Buyer and the Customer, and their respective representatives, employees, agents, customers, invitees, subsidiaries, affiliates, successors and assigns, harmless from and against all liabilities, claims, demands, losses, costs, damages and expenses of any nature or kind (including consequential and special damages, personal injury, property damages, lost profits, recall or other Customer field service action costs, costs allocated under a Customer warranty allocation program, production interruption costs, inspection, handling and reworking charges, professional and other legal fees, and other costs associated with Buyer's administrative time, labor and materials) arising from or as a result of: (i) any breach of the Seller's Warranties; and (ii) any other acts, omissions or negligence of Seller or of any of its subcontractors or suppliers in connection with Seller's performance of its obligations under this Order. No

limitations on Buyer's rights or remedies in any of Seller's documents shall operate to reduce or exclude such indemnification.

(d) Seller acknowledges that Buyer may defend any claim brought by the Customer that the Goods or Services are in breach of the Seller's Warranties or are otherwise defective and do not meet the contractual requirements of this Order. Seller agrees that Buyer's action to defend such claims is in the interest of both Buyer and Seller and is done to mitigate damages. Seller waives the right to argue that Buyer's defense of such claims in any way limits Buyer's right to seek indemnity from Seller or assert a claim against Seller that Seller has breached the Seller's Warranties or otherwise failed to meet the legal and contractual requirements of this Order.

(e) During the time period this Order remains in effect, Seller warrants that it will not supply the Goods or Services directly to the Customer for the OEM vehicle program for which Buyer intends to incorporate the Goods or Services without Buyer's prior written consent.

**15. DEFECTIVE OR NON-CONFORMING GOODS OR SERVICES**

(a) If any of the Goods or the Services fail to meet the Seller's Warranties, Seller shall, upon notice thereof from Buyer at any time, promptly repair, replace or otherwise satisfactorily deal with the same in a manner acceptable to Buyer, all at Seller's expense and without limiting or affecting Buyer's other rights or remedies available hereunder or at law. The Seller's Warranties shall also apply to such repaired, replaced or otherwise satisfactorily dealt with the Goods or the Services.

(b) If Seller fails to repair, replace or otherwise deal with any defective or non-conforming Goods or Services in a manner acceptable to Buyer, Buyer may, without limiting or affecting Buyer's other rights or remedies available hereunder or at law, cancel this Order as to the particular Goods or Services and/or cancel the then remaining balance of this Order.

(c) After notice to Seller, all defective or non-conforming Goods shall be held at Seller's risk. Buyer may, and at Seller's direction shall, return such defective or non-conforming Goods to Seller at Seller's risk, and Seller shall promptly pay, upon Buyer's demand, all transportation and other applicable charges, both to and from the original destination.

(d) Any payment made by Buyer for defective or non-conforming Goods or Services shall be refunded by Seller, except to the extent that Seller promptly replaces or corrects the same at Seller's expense.

(e) None of Buyer, its subsidiaries or affiliates, or their respective successors, assigns, representatives, employees, agents or customers shall be liable for, or be obligated to indemnify or hold any of Seller, its subsidiaries or affiliates, or their respective successors, assigns, representatives, employees, agents, subcontractors or suppliers harmless from and against, any liabilities, claims, demands, costs, damages or expenses of any kind or nature (including personal injury, property damage, consequential or special damages) arising from or as a result of the improper, unsafe or defective materials, workmanship or design of the Goods or the Services.

**16. INSPECTION AND QUALITY CONTROL**

(a) Buyer has the right to inspect any and all of the Goods, both prior to and after making payment therefor. Seller acknowledges and agrees that Buyer may choose not to perform incoming inspections with respect to the Goods, without prejudice to any rights or remedies available to Buyer hereunder or at law, and Seller waives any rights to require Buyer to conduct such inspections.

(b) Buyer also has the right to inspect or test all materials and workmanship utilized by Seller in the performance of this Order, and Seller shall permit such inspection or testing by Buyer and/or the Customer to the extent practicable at all times and places, including during the period of manufacture. If any such inspection or testing is made on Seller's premises, Seller shall provide, without additional charge, all reasonable facilities and assistance. Inspection and approval at Seller's premises does not preclude rejection or other relief for any defects subsequently discovered. Seller shall provide and maintain, without additional charge, a testing and inspection system (which shall include documented quality control and reliability procedures) acceptable to Buyer covering the materials and workmanship utilized in the performance of this Order.

(c) At Buyer's option, Buyer and/or the Customer may from time to time review and inspect Seller's testing, inspection, quality control and reliability procedures, as well as the records and data supporting the same. Seller shall comply with Buyer's most recently adopted quality control specifications, inspection standards and quality assurance manuals as may be supplied by Buyer to Seller directly, or as may be posted on

Buyer's Website from time to time. Seller shall, if requested by Buyer, furnish certificates indicating such compliance.

(d) Buyer's payment for and/or acceptance of the Goods or the Services shall not relieve Seller from any of its obligations and/or warranties under this Order. Subject to Buyer's rights under subparagraph 17(b) respecting Buyer's title to the Goods upon payment therefor, in no event shall payment for the Goods or the Services be deemed to constitute acceptance by or on behalf of Buyer for any other purposes hereunder or at law.

(e) Seller will conform to the quality control standards and inspection systems, as well as related standards, policies and systems, that are established or required by Buyer and, to the extent directed by Buyer, the Customer. Seller agrees to meet the full requirements of industry Production Part Approval Processes (PPAP) as specified by Buyer and the Customer, as applicable, and agrees to present this information to Buyer upon request, at the level requested, unless otherwise specifically agreed by Buyer in writing.

**17. MATERIALS, EQUIPMENT, TOOLS AND FACILITIES**

(a) Unless otherwise expressly stated in this Order, Seller shall supply at its own expense all materials, equipment, tools, jigs, dies, fixtures, patterns, drawings, specifications, samples and facilities required to perform this Order (the "Seller's Property"). Seller grants Buyer an irrevocable option to take possession of and title to the Seller's Property that is special for the production of the Goods, upon payment to Seller of its net book value less any amounts that Buyer has previously paid to Seller for the cost of such items; provided, however, that this option shall not apply if the Seller's Property is used to produce goods that are the standard stock of Seller or if a substantial quantity of similar goods are being sold by Seller to others.

(b) Notwithstanding any other provision in this Order, Seller expressly acknowledges and agrees that: (i) all materials, parts, components, assemblies, equipment, tools, jigs, dies, fixtures, patterns, drawings, specifications, samples and facilities, including any replacements thereof, any materials affixed or attached thereto and any special tooling produced by Seller for the performance of its obligations under this Order ("Tooling"), that are furnished to Seller or specifically paid for, in whole or in part, by Buyer (including pursuant to subparagraph 17(a)) or by the Customer; and (ii) all of the Goods that have been paid for, in whole or in part, by Buyer, whether or not Buyer has exercised its rights of inspection in respect thereof (all items in clauses (i) and (ii) above, collectively the "Buyer's Property"), shall be held by Seller on a bailment basis and remain the property of, with both title and the right of possession in, Buyer and without limitation to any rights and remedies available hereunder or at law. The Buyer's Property, while in Seller's custody or control or while in the custody or control of Seller's suppliers, contractors or agents, shall be held at Seller's risk, shall be kept insured by Seller at Seller's expense against loss or damage in an amount equal to the replacement cost thereof, and shall be subject to removal at Buyer's written request. Seller shall promptly notify Buyer of the location of the Buyer's Property, if any are located at any place other than Seller's facility. Unless otherwise expressly stated in this Order, Seller shall maintain accounting and property control records for the Buyer's Property in accordance with sound industrial practices. Seller shall, at Seller's expense, maintain the Buyer's Property in good condition and repair, and shall replace any of the Buyer's Property if, as and when necessary or reasonably required. Buyer does not provide any warranties with respect to the Buyer's Property. Upon completion or termination of this Order, Seller shall retain on a bailment basis for Buyer, as aforesaid, the Buyer's Property still then in the physical possession of Seller, at Seller's expense, until disposition directions are received from Buyer. Upon receipt of Buyer's demand or disposition directions, Seller shall, at Seller's expense, prepare the Buyer's Property for shipment and shall deliver it to such locations as may be specified by Buyer. The Buyer's Property shall be in no less than the same condition as originally received by Seller, reasonable wear and tear excepted. If Buyer or Seller defaults under this Order, Seller shall upon Buyer's demand immediately deliver the Buyer's Property to Buyer and, if Buyer so requests, grant Buyer access to Seller's premises for the purpose of removing the Buyer's Property.

(c) All materials, supplies and services to be manufactured, produced or provided in conjunction with this Order must be in strict accordance with the specifications set forth in this Order or as otherwise specified by Buyer to Seller.

(d) Seller shall use the Buyer's Property referenced in clause 17(b)(i) solely for the purpose of performing its obligations under this Order.

**18. INTELLECTUAL PROPERTY**

(a) Seller shall indemnify and hold Buyer, its subsidiaries and affiliates, their respective successors and assigns, the Customer and users of products containing the Goods or the Services, harmless from and against all liabilities, demands, claims, losses, costs, damages and expenses of any nature or kind (including court costs and legal and other professional fees) arising from or as a result of the infringement or alleged infringement of any patent, trademark, copyright, industrial design or process of manufacture for or on account of the manufacture, sale or use of the Goods or the Services, or of the products containing the Goods or the Services. Seller expressly waives any claim against Buyer that any such infringement or alleged infringement arises out of compliance with Buyer's specifications. Buyer shall notify Seller of any suit filed against Buyer, its subsidiaries and affiliates, their respective successors and assigns, the Customer or users of products containing the Goods or the Services, on account of any such infringement or alleged infringement and, at Seller's request, shall give Seller control of the defense of such suit, insofar as Buyer has the authority to do so, and reasonable information and assistance in connection therewith, all at Seller's expense. Buyer and other indemnified parties shall have the right to be represented by their own counsel and actively participate in any such suit, and the reasonable costs of such representation shall be paid by Seller on demand.

(b) Seller hereby grants to Buyer, its subsidiaries and affiliates, and their respective successors and assigns, and Buyer hereby accepts, a non-exclusive, irrevocable, worldwide license, including the right to sublicense to others in connection with providing the Goods or the Services to Buyer or the Customer, under: (i) patents, industrial designs, technical information, know-how, processes of manufacture and other intellectual property, owned or controlled by Seller or its affiliates, and relating to the Goods or the Services, to make, have made, repair, reconstruct, rebuild, relocate, use, sell and import the Goods and the Services, and (ii) any works of authorship fixed in any tangible medium of expression (including drawings, prints, manuals and specifications) furnished by Seller in the course of Seller's activity under this Order, to reproduce, distribute and display such works and to prepare derivative works based thereon, subject to the other provisions of this Order (all items in clauses (i) and (ii) above, collectively, "Seller's Intellectual Property", and such license in respect thereof, the "License"). Seller acknowledges and understands that the License shall be effective from the first date of delivery of the Goods or the Services under this Order and extend for so long as Buyer has contractual obligations to the Customer. Except as provided below, Buyer agrees to pay to Seller a reasonable royalty for the License, and Seller acknowledges that: (x) until the end of the second Model Year (as defined below) after the first date of delivery of the Goods or the Services under this Order, such reasonable royalty shall be deemed to be included in the prices paid by Buyer to Seller under this Order, and thereafter the License shall be deemed to be royalty free and fully paid-up; and (y) in the event that, prior to the end of the second Model Year after the first date of delivery of the Goods or the Services under this Order, Buyer wishes to fully enjoy the rights of the License to obtain the supply of the Goods or the Services from any third party, Buyer agrees to pay an additional amount for such reasonable royalty, for a period from the date of obtaining such supply from such third party until the end of the second Model Year after the first date of delivery of the Goods or the Services under this Order, and thereafter the License shall be royalty free and fully paid-up. Buyer and Seller agree to negotiate in good faith such additional amount for such reasonable royalty, provided that in no event shall such additional amount be in excess of one and one half percent (1½%) of the then-current price of the Goods or the Services. Buyer and Seller acknowledge and agree that the License granted and accepted under this subparagraph 18(b) shall be royalty free and fully paid-up to Buyer in the event that this Order is terminated by Buyer pursuant to paragraphs 25 or 26, or in the event that Seller for any reason is unable to satisfy the quality, quantity, delivery or related requirements of Buyer for the Goods or the Services under this Order. The License is intended to be subject to 11 USC Section 365(n), as an executory agreement under which Buyer has license rights to Seller's Intellectual Property, and is supplementary to any other rights of Buyer under this Order and any other agreement with Seller. For the purposes of this subparagraph 18(b), "Model Year" means the full or partial model year established by the original equipment manufacturer of the vehicle into which the Goods or the Services are incorporated.

(c) To the extent that Seller creates or develops any patents, industrial designs, technical information, know-how, processes of manufacture or other intellectual property in the performance of Seller's obligations under this Order, Seller shall: (i) assign to Buyer each invention, discovery or improvement (whether or not patentable) that is conceived or first reduced to practice by Seller, or by any person employed by or working under the direction of Seller, in the performance of Seller's obligations under this Order; and (ii) promptly disclose in an acceptable form to Buyer all such inventions, discoveries or improvements and cause Seller's employees to sign any papers necessary to enable Buyer to obtain title to and to file

applications for patents throughout the world. To the extent that any works of authorship (including, without limitation, software and computer programs) are created in the performance of Seller's obligations under this Order, such works shall be considered "works made for hire", and to the extent that such works do not qualify as "works made for hire", Seller hereby assigns to Buyer all right, title, and interest in all copyrights and moral rights therein.

(d) Seller shall not manufacture or provide, or offer to manufacture or provide, any goods or services that are based in whole or in part upon Buyer's intellectual property and/or the drawings or specifications in respect of the Goods or the Services, or any derivative thereof, whether for its own purposes (other than to satisfy its obligations under this Order), for the Customer or any other third parties, without Buyer's prior written consent. The foregoing restriction shall not apply in respect of "off-the-shelf" or "catalogue" goods or services that have been routinely manufactured or provided by Seller and developed by Seller, in each case prior to this Order and independently of its relationship with Buyer.

**19. CONFIDENTIALITY AND NON-DISCLOSURE**

(a) Seller shall consider and treat all Information (as defined in subparagraph 19(b)) as confidential and shall not disclose any Information to any other person, or use any Information itself for any purpose other than pursuant to and as required by this Order, without Buyer's prior written consent. Buyer retains all rights with respect to the Information, and Seller shall not acquire, nor attempt to obtain, any patent, trademark, copyright, license or other rights in respect of the Information. Seller shall not allow any Information to be reproduced, communicated or in any way used, in whole or in part, in connection with services or goods furnished to others, without Buyer's prior written consent.

(b) For the purposes of this Order, "Information" means all drawings, reproductions, specifications, designs, engineering instructions, photographs, reproducible copy, parts lists, plans, reports, working papers, computations and other information furnished by Buyer and shall include all terms and conditions and any other information relating to this Order.

(c) Seller shall not advertise or otherwise disclose the fact that Buyer has contracted to purchase the Goods or the Services from Seller, without Buyer's prior written consent.

**20. DISCLOSURE TO BUYER**

Unless otherwise expressly stated in this Order and except as may be agreed in a prior written agreement between Buyer and Seller, no commercial, financial or technical information furnished or disclosed in any manner or at any time by Seller to Buyer shall be deemed to be secret or confidential, and Seller shall have no rights against Buyer or the Customer with respect to any use or disclosure of such information.

**21. COMPLIANCE WITH CODE OF CONDUCT AND LAWS**

(a) Seller's performance of its obligations under this Order shall be in compliance with Magna's Code of Conduct and Ethics and all federal, provincial, state and local laws, ordinances, rules, codes, standards and regulations that are applicable to this Order, including but not limited to the United States Foreign Corrupt Practices Act, the Canadian Corruption of Foreign Public Officials Act, the Arms Export Control Act, the International Traffic in Arms Regulations, the Export Administration Act and the Export Administration Regulations, including the requirement for obtaining any export license or agreement, if applicable (collectively, "Laws"). Seller shall furnish Buyer with certificates of compliance, where required under such applicable Laws or when requested by Buyer. Each invoice rendered to Buyer under this Order shall constitute written assurance by Seller that Seller has fully complied with all applicable Laws. Seller will participate in or respond to, at Seller's expense, any audit, investigation, inquiry, certification or screening process reasonably requested by Buyer or its third party vendors to verify Seller's compliance with this paragraph 21.

(b) Seller shall package, label and transport the Goods and their containers, in particular those which constitute a health, poison, fire, explosion, environmental, transportation or other hazard, in compliance with all applicable Laws in effect in the place to which the Goods are shipped or as otherwise specified by Buyer. Upon request, Seller shall furnish Buyer with information regarding the ingredients of the Goods.

(c) Seller represents that: (i) neither it nor any of its subcontractors or suppliers will either engage in or permit substandard working conditions in the supply of the Goods or the Services under this Order, (ii) child labor or underage labor, as defined by applicable law, will not be utilized, (iii) it will not allow any form of forced or compulsory labor, (iv) workers, without fear of reprisal, intimidation or harassment, shall have the right to associate freely and join labor unions and workers' councils or to otherwise refrain from joining

such organizations as they so choose, in accordance with applicable laws, (v) workers shall be protected against any form of harassment and discrimination in any form, including but not limited to gender, age, religion, disability and political beliefs, (vi) workers shall have a safe and healthy workplace that meets or exceeds all applicable standards for occupational health and safety, (vii) workers shall be compensated with wages and benefits that comply with applicable law, including minimum wages, overtime hours and legally mandated benefits and (viii) working hours shall comply with all applicable laws regulating hours of work.

(d) Upon request, Seller shall furnish Buyer with such written verification as Buyer deems necessary to certify the origin of any ingredients or materials in the Goods. Seller shall also promptly furnish to Buyer all documents and other information requested by Buyer so that Buyer may comply in a timely manner with all applicable laws governing consumer protection, conflict minerals or similar materials or ingredients.

(e) Seller shall indemnify and hold Buyer, its subsidiaries and affiliates, their respective successors, assigns, representatives, employees and agents, and the Customer harmless from and against all liabilities, claims, demands, losses, costs, damages and expenses of any kind and nature (including personal injury, property damage, consequential and special damages) arising from or as a result of Seller's failure to comply with this paragraph 21.

**22. SELLER'S ENTRY UPON BUYER'S OR CUSTOMER'S PREMISES**

If Seller or any of its representatives, employees, agents, subcontractors or suppliers (collectively, "Seller Parties") enter upon the premises owned or controlled by Buyer or its subsidiaries or affiliates (the "Buyer's Premises") or upon the Customer's premises, in each case in connection with Seller's performance of its obligations under this Order, Seller shall: (i) indemnify and hold Buyer and the Customer, and their respective representatives, employees, agents, customers, invitees, subsidiaries, affiliates, successors and assigns, harmless from and against all liabilities, demands, claims, losses, costs, damages and expenses of any kind or nature (including legal and other professional fees) by reason or on account of property damage, death and/or personal injury, arising from or as a result of Seller's performance of its obligations under this Order, which is or are occasioned by Seller Parties' actions, omissions or negligence; and (ii) ensure that Seller Parties are in compliance with all requirements of any workers' compensation legislation of the jurisdictions in which the Buyer's Premises or the Customer's premises are located.

**23. INSURANCE**

(a) Seller shall maintain and carry: (i) property and general liability insurance, including public liability, property damage liability, product liability and contractual liability coverages and professional liability coverage as Buyer may require based on the Services; and (ii) workers' compensation and employers' liability insurance covering all employees engaged in the performance of this Order; in each case in such amounts and with such limits (subject to subparagraph 23(c)) and with such insurers that are reasonably acceptable to Buyer and which are licensed to provide insurance coverage in the jurisdictions in which any Services will be conducted or otherwise are applicable to Seller. Each policy shall expressly state that it provides primary coverage to any other insurance coverage available to Buyer and shall include an endorsement under which the insurer waives any rights of subrogation it may have against Buyer.

(b) Unless otherwise expressly stated in this Order, Seller's liability insurance policies shall have combined single limits of no less than five million U.S. dollars (U.S.$5,000,000) per occurrence and in the aggregate; provided that such limits shall not limit Seller's liability under this Order. Seller's property insurance policies shall be written on a "replacement cost" basis and Seller's workers' compensation policies shall be in compliance with applicable statutory requirements and limits.

(c) Seller shall furnish Buyer with certificates or other satisfactory proof of insurance confirming the foregoing insurance coverages within ten (10) days of Buyer's request. Any such insurance and the certificates shall provide for terms and conditions satisfactory to Buyer whereby, among other things: (i) the interest of Buyer in such insurance coverage is recognized by designating Buyer as an Additional Insured or Loss Payee, as interests may appear, or as may be requested by Buyer from time to time; and (ii) each policy shall contain an endorsement that the coverage will not be cancelled or materially changed or amended in any way without at least thirty (30) days prior written notice to Buyer. Buyer shall have the right, but not the obligation, to maintain such insurance coverage prior to the expiration of such notice. The receipt or review of such certificates or other proof of insurance coverage at any time by Buyer shall not relieve Seller from its liability or its insurance obligations hereunder or reduce or modify such insurance obligations.

**24. TERMINATION FOR CONVENIENCE UPON NOTICE**

(a) In addition to any other rights of Buyer to terminate this Order, Buyer may, in its sole discretion, upon thirty (30) days prior written notice to Seller or, if applicable, such shorter period as may be required by the Customer, terminate this Order for convenience or any other reason, in whole or in part (other than the minimum quantities specified in subparagraph 5(b)) at any time, and notwithstanding the existence of any excusable delay or other events or circumstances affecting Seller. Buyer's notice to Seller may be given by facsimile, e-mail or other form of electronic transmission, and shall state the extent and effective date of termination. Seller may not terminate this Order for convenience or any other reason, except as otherwise expressly provided in this Order.

(b) Upon receipt of notice of termination from Buyer, Seller shall, to the extent directed by Buyer or its representatives: (i) stop work under this Order and any other orders related to work terminated by such notice; and (ii) protect all property in Seller's possession or control in which Buyer has or may acquire an interest, including the Buyer's Property. Seller shall promptly submit to Buyer any claims relating to such termination, and in any event within twenty one (21) days (unless Buyer agrees otherwise) from the effective date of such termination. Seller hereby grants Buyer the right to audit and inspect its books, records and other documents relating to any termination claims.

(c) Buyer shall, in addition to making payment of the price specified in this Order for the Goods and the Services delivered or performed and accepted by Buyer prior to the effective date of termination, pay to Seller the following amounts, without duplication: (i) the price specified in this Order for the Goods and the Services manufactured or provided in accordance with the terms of this Order but not previously paid for; and (ii) the actual costs of work-in-process and parts and raw materials incurred by Seller in performing its obligations under this Order, to the extent such costs are reasonable in amount and are properly allocated or apportioned under generally accepted accounting principles to the terminated portion of this Order. Buyer shall not be obligated to make any payment for: (x) the Goods, the Services, or work-in-process or parts or raw materials inventory that are manufactured, provided or procured by Seller in amounts in excess of those authorized in any Release, that are damaged or destroyed or that are not merchantable or useable; (y) any undelivered Goods that are in Seller's standard stock or that are readily marketable; or (z) work-in-process or parts or raw materials inventory that can be returned to Seller's suppliers or subcontractors for credit. Payments made in connection with a termination of this Order under subparagraph 24(a) shall not exceed the aggregate price for the Goods or Services that would be manufactured or provided by Seller under any Release outstanding at the effective date of termination. Except as provided in this subparagraph 24(c), Buyer shall not be liable for and shall not be required to make payments to Seller, directly or indirectly (whether on account of claims by Seller's subcontractors or otherwise), for any loss arising from or attributable to failure to realize anticipated revenue, savings or profit, unabsorbed overhead, interest on claims, product development and engineering costs, facilities and equipment rearrangement costs or rental, unamortized depreciation cost or general and administrative burden charges from a termination of this Order. In the event of a termination of this Order by Buyer as a result of Buyer ceasing to be a supplier to the Customer for the vehicle program in respect of which Buyer issued this Order, Buyer shall only be obligated to compensate Seller for any costs under this paragraph if, when and to the extent that the Customer reimburses Buyer for such costs.

(d) Subject only to subparagraph 17(b), Seller may, with Buyer's prior written consent, retain or sell at an agreed price any of the Goods, the Services, work in process or raw materials inventory, the cost of which is allocated or apportioned to this Order under clause 24(c)(ii), and shall credit or pay the amounts so agreed or received as Buyer directs, with an appropriate adjustment for any delivery cost savings. Seller shall, if directed by Buyer, transfer title to and make delivery of any Goods, work in process or raw materials inventory not so retained or sold.

**25. TERMINATION UPON SELLER'S DEFAULT OR CHANGE OF CONTROL**

(a) Buyer may terminate this Order, in whole or in part, for default occasioned by Seller's: (i) breach of any terms of this Order; (ii) failure to perform in accordance with the requirements of this Order; or (iii) failure to make progress so as to endanger timely and proper delivery of the Goods or completion of the Services and, in each such case, Seller does not cure or correct such breach or failure within ten (10) days (or such shorter period of time as Buyer may determine, if commercially reasonable under the circumstances) after receipt of written notice from Buyer specifying such breach or failure. Seller shall be liable for all costs, damages and expenses caused by or resulting from its default under this Order.

(b) Buyer may terminate this Order, in whole or in part, in the event of a change of control of Seller. For the purposes of this Order, a "change of control" includes: (i) any sale, lease or exchange of a substantial portion of Seller's assets used in connection with Seller's performance of its obligations under this Order; (ii) any sale or exchange of a sufficient number of shares of Seller, or of any affiliate that controls Seller, to effect a change in management of Seller; or (iii) the execution of a voting or other agreement of control in respect of Seller, or of any affiliate that controls Seller. Seller shall notify Buyer in writing within ten (10) days of any change of control of Seller, and Buyer may terminate this Order by giving written notice to Seller at any time up to sixty (60) days after Buyer's receipt of Seller's notice of change of control.

(c) Any termination under this paragraph 25 shall be without liability to Buyer, except for the Goods delivered or the Services performed by Seller and accepted by Buyer.

**26. TERMINATION UPON INSOLVENCY, BANKRUPTCY, ETC.**

(a) Either party may terminate this Order, without liability to the other party: (i) in the event of the insolvency, bankruptcy, reorganization, receivership or liquidation by or against the other party; (ii) in the event that the other party makes an assignment for the benefit of its creditors or ceases to carry on business in the ordinary course; or (iii) if a receiver is appointed in respect of the other party or all or part of its property (collectively, an "Insolvency Event"). In the event of such termination, the other party shall be liable for all costs, damages and expenses suffered by the party that terminates this Order. Any such termination shall not affect the entitlement of Buyer with respect to the Buyer's Property, including pursuant to subparagraph 17(b).

(b) In the event that Buyer does not terminate this Order upon the occurrence of an event in subparagraph 26(a) in respect of Seller, Buyer may make such equitable adjustments in the price and/or delivery requirements under this Order as Buyer deems appropriate to address the change in Seller's circumstances, including Seller's on-going liability to perform its obligations regarding warranty, defective Goods or Services or other requirements under this Order.

**27. TRANSITION OF SUPPLY**

(a) In connection with Buyer's termination or non-renewal of this Order, or Buyer's other decision to source the Goods and/or the Services from any alternate supplier(s), Seller will cooperate with Buyer in the transition of supply of the Goods and/or the Services, including the following: (i) Seller will continue production and delivery of all Goods and/or Services as ordered by Buyer, at the prices and other terms stated in this Order, without premium or other condition, during the entire period reasonably needed by Buyer to complete the transition to the alternate supplier(s), such that Seller's action or inaction causes no interruption in Buyer's ability to obtain the Goods and/or Services as needed; (ii) at no cost to Buyer, Seller will promptly provide all requested information and documentation regarding and access to Seller's manufacturing process, including on-site inspections, bill-of-material data, tooling and process detail and samples of the Goods and/or Services and components; and (iii) subject to Seller's reasonable capacity constraints, Seller shall provide special overtime production, storage and/or management of extra inventory of the Goods, extraordinary packaging and transportation and other special services (collectively, "Transition Support") as expressly requested by Buyer in writing.

(b) If the transition of supply occurs for reasons other than Buyer's termination of this Order pursuant to paragraphs 25 or 26, Buyer shall, at the end of the transition period, pay the reasonable, actual cost of Transition Support as requested by Buyer and incurred by Seller, provided that Buyer has approved Seller's estimate of such costs prior to Seller incurring such amounts.

**28. SERVICE AND REPLACEMENT PARTS**

(a) Except as otherwise expressly agreed in writing, for fifteen (15) years after a vehicle design or specific part concludes production, Seller shall supply Buyer's written "service parts" orders for the same Goods, component parts and materials, at the prices set forth in this Order plus any actual cost differential for special packaging. If the Goods are systems or modules, Seller shall sell each component or part at a price that does not, in the aggregate, exceed the system or module price specified in this Order, less assembly costs, plus any actual cost differential for packaging. Seller's obligation with respect to service or replacement parts shall survive the termination or expiration of this Order.

(b) At Buyer's request, Seller shall make service literature and other materials available at no additional charge to support Buyer's service part sales activities.

**29. RIGHT TO AUDIT AND FINANCIAL REVIEW**

(a) Seller grants to Buyer and to Buyer's authorized agents and representatives access to all pertinent information, including books, records, payroll data, receipts, correspondence and other documents, for the purpose of auditing Seller's charges under this Order and compliance with its terms, during the term of this Order and for an additional five (5) years after the final payment under this Order. Seller shall preserve such information for such period (or longer, if required by applicable law). In addition, all work, materials, inventories and other items provided for under this Order must at all times be accessible to Buyer and to Buyer's authorized agents and representatives, including parts, tools, fixtures, gauges and models. Seller shall segregate its records and otherwise co-operate with Buyer so as to facilitate any such audit.

(b) If such audit shows any price discrepancy or Seller's non-compliance, Seller shall reimburse Buyer for such discrepancy or other loss caused by its non-compliance with this Order, together with interest at an annual rate of twelve percent (12%) (or such maximum rate allowed by applicable law, if lower), plus the cost of such audit.

(c) Buyer, or a third party designated by and acting on behalf of Buyer, may at any time review the financial condition of Seller and its affiliates, and Seller shall fully co-operate in such review and shall make its financial managers available for discussions during reasonable business hours. Buyer and any such designated third party shall keep confidential any non-public information about Seller and its affiliates obtained in such financial review and shall use such information only for purposes of such financial review, except as otherwise needed to enforce this Order.

**30. BUYER'S WEBSITE**

(a) Buyer's internet website (or such other website as may be directed through links available on such website) as specified on the face of this Order ("Buyer's Website") may contain specific additional requirements for certain items covered by this Order, including labeling, packaging, shipping, delivery and quality specifications, procedures, directions and/or instructions. Any such requirements shall be deemed to form part of the Terms and this Order. Buyer may periodically update such requirements by posting revisions thereto on Buyer's Website. In the event of any inconsistency between this Order and Buyer's Website, the terms of this Order shall prevail, unless the requirements specified on Buyer's Website expressly provide otherwise.

(b) Buyer may modify these purchase order terms and conditions from time to time by posting revised purchase order terms and conditions to Buyer's Website. Such revised purchase order terms and conditions shall apply to all purchase orders and purchase order revisions issued on or after the effective date thereof. Seller shall review Buyer's Website periodically.

**31. SUBCONTRACTS**

Seller will ensure that the terms of its contracts with its sub-suppliers and sub-contractors provide Buyer and the Customer with all of the rights specified in this Order, including but not limited to those set forth in subparagraph 3(a).

**32. ASSIGNMENT**

(a) Seller shall not assign this Order or any portion hereof or work hereunder or any interest herein, except that Seller may, with Buyer's prior written consent, make an assignment of monies due or which may become due hereunder to a bank or other financing institution; provided that any such assignment by Seller shall be subject to set-off, deduction, recoupment or any other lawful means of enforcing any present or future claims that Buyer may have against Seller, and provided further that any such assignment shall not be made to more than a single assignee. In the event of any such assignment, Seller shall provide to Buyer, in addition to written notice of the assignment, a true copy of the instrument of assignment for Buyer's information only and, notwithstanding such receipt by Buyer, such notice of assignment and/or instrument of assignment shall not be deemed to vary or waive the provisions of this paragraph.

(b) Buyer shall have the right to assign this Order or its interest herein, without Seller's consent, to any of its affiliates or to any purchaser or successor to Buyer's business.

**33. RIGHT OF BUYER TO PERFORM**

If Seller fails to perform any of its obligations under this Order, Buyer and its agents may, without limiting or affecting its other rights and remedies available hereunder or at law, but shall not be obligated to, perform such

obligations without waiving or releasing Seller from such obligations. Where applicable, Buyer and its agents shall be entitled to enter upon Seller's premises to perform, or to remove the Tooling and all materials necessary to perform, such obligations. All costs, damages and expenses incurred directly or indirectly by Buyer in connection with the foregoing, including legal and other professional fees and Buyer's administrative time, labor and materials, shall be paid by Seller to Buyer on demand or, at Buyer's sole option, may be set off against and deducted from any amounts then owing by Buyer to Seller.

**34. REMEDIES**

(a) The remedies reserved in this Order shall be cumulative and not alternative and may be exercised separately or together, in any order or combination, and are in addition to any other remedies provided for or allowed by law, at equity or otherwise.

(b) Seller expressly acknowledges and agrees that any failure of Seller to deliver the Goods on the delivery dates and times as specified in this Order will cause irreparable harm to Buyer and that Buyer shall be entitled to equitable relief, including injunction, in such event.

(c) Any proceeding or action initiated by Seller for breach of contract or any other act or omission (including tort) arising from or in any way related to this Order must be commenced within one (1) year from the date the breach, act or omission giving rise to Seller's claim occurs, regardless of Seller's knowledge of such breach, act or omission or of its consequences.

**35. WAIVER**

Either party's failure to insist on the performance by the other party of any Term or failure to exercise any right or remedy reserved in this Order, or either party's waiver of any breach or default hereunder by the other party shall not, thereafter, waive any other terms, conditions, rights, remedies, breaches or defaults, whether of the same or a similar type or not.

**36. MODIFICATIONS**

No modification of this Order, including any waiver of or addition to any of the Terms, shall be binding upon Buyer, unless made in writing and signed by Buyer's authorized representative.

**37. TORT OBLIGATIONS**

Buyer's rights and Seller's obligations under this Order shall not limit in any way whatsoever Seller's common-law tort obligations or Buyer's right to sue in tort in addition, or as an alternative, to suing in contract. Seller hereby waives the right to sue in tort in respect of any matter that is addressed, in whole or in part, by the terms and conditions of this Order.

**38. RELATIONSHIP OF THE PARTIES**

Seller and Buyer are independent contracting parties and nothing in this Order shall make either party the agent or legal representative of the other for any purpose whatsoever, nor does this Order grant either party any authority to assume or to create any obligation on behalf of or in the name of the other. None of the persons engaged by Seller in the performance of its obligations under this Order shall be considered as employees of Buyer.

**39. SEVERABILITY**

If any provision of this Order is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such provision shall be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this Order shall remain in full force and effect.

**40. NOTICES**

(a) Except as otherwise expressly stated in this Order, any notice given or other communication sent under this Order shall be in writing and shall be properly delivered to its addressee by hand, prepaid courier, registered mail, e-mail (receipt confirmed) or facsimile (receipt confirmed) at the applicable address noted on the face of this Order. Any notice or communication given as provided herein shall be deemed to have been received at the time of its delivery if delivered by hand, on the business day following its dispatch if transmitted by courier, e-mail or facsimile or on the third business day following its mailing if transmitted

by registered mail. Either party may notify the other party, in the manner provided for herein, of any change of address, for the purpose of giving notices or sending communications under this Order.

(b) Seller's failure to provide any notice, claim or other communication to Buyer in the manner and within the time periods specified in this Order shall constitute a waiver by Seller of any and all rights and remedies that otherwise would have been available to Seller upon making such notice, claim or other communication.

**41. SURVIVAL**

The obligations of Seller to Buyer shall survive termination of this Order, except as otherwise expressly stated in this Order.

**42. GOVERNING LAW AND JURISDICTION**

(a) If the location of Buyer from which this Order issued is in the United States of America, this Order shall be interpreted and enforced in accordance with the local, domestic laws of the State of Michigan and of the United States of America, exclusive of the choice of law rules thereof. If the location of Buyer from which this Order issued is in Canada, this Order shall be interpreted and enforced in accordance with the local, domestic laws of the Province of Ontario and of Canada, exclusive of the choice of law rules thereof. Except as otherwise expressly stated in this Order, if the location of Buyer from which this Order issued is other than as set forth above and is not in Europe, this Order shall be interpreted and enforced in accordance with the local, domestic laws of the State of Michigan and of the United States of America, exclusive of the choice of law rules thereof. For greater certainty, the United Nations Convention on Contracts for the International Sale of Goods shall not apply to this Order.

(b) Any litigation on contractual claims arising from this Order may be brought by Buyer in any court having jurisdiction over Seller or, at Buyer's option, in any court having jurisdiction over any Buyer's locations specified in this Order, in which event Seller consents to jurisdiction and service of process in accordance with applicable procedures. Any claim or proceeding by Seller against Buyer may be brought by Seller only in the court having jurisdiction over the location of Buyer from which this Order issued. Seller irrevocably waives and agrees not to raise any objection it might now or hereafter have to any such claim or proceeding in any such court, including any objection that the place where such court is located in an inconvenient forum or that there is any other claim or proceeding in any other place relating in whole or in part to the same subject matter.