## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MARADA INDUSTRIES, INC., D/B/A COSMA BODY ASSEMBLY MICHIGAN, | ) ) | CASE NO. 1:22-cv-2333 |
| | ) | JUDGE DAVID A. RUIZ |
| Plaintiff, | ) | |
| | ) | **FIRST AMENDED ANSWER AND** |
| v. | ) | **COUNTERCLAIMS OF** |
| | ) | **DEFENDANT ANCHOR TOOL &** |
| ANCHOR TOOL & DIE CO., D/B/A | ) | **DIE CO., D/B/A ANCHOR** |
| ANCHOR MANUFACTURING GROUP, | ) | **MANUFACTURING GROUP, INC.** |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Anchor Tool & Die Co., d/b/a Anchor Manufacturing Group, Inc. ("Anchor Tool" or "Defendant"), for its First Amended Answer to the Verified Complaint (the "Complaint"), filed by Plaintiff Marada Industries, Inc., d/b/a Cosma Body Assembly Michigan ("CBAM"), states as follows:

## <u>INTRODUCTION</u>

1.     Anchor had a relationship with CBAM in which Anchor provided automotive parts to CBAM and CBAM was required to pay for Anchor providing said parts.     Anchor denies the remainder of the allegations contained in Paragraph 1 of the Complaint.

2.     Paragraph 2 of the Complaint contains legal conclusions to which no response is required.   To the extent a response is required, Anchor denies the allegations contained in Paragraph 2 of the Complaint.

3.     Anchor denies the allegations contained in Paragraph 3 of the Complaint.

4.     Anchor denies the allegations contained in Paragraph 4 of the Complaint.

5.      Anchor states Paragraph 5 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Anchor denies the allegations contained in Paragraph 5 of the Complaint.

6.      Anchor states Paragraph 6 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Anchor denies the allegations contained in Paragraph 6 of the Complaint.

7.      Paragraph 7 of the Complaint does not contain allegations, but, rather, a prayer for relief from the Court.  A response to Paragraph 7 of the Complaint therefore is not required.  To the extent a response is required, Anchor denies the allegations contained in Paragraph 7 of the Complaint.

## PARTIES, JURISDICTION, AND VENUE

8.      Anchor denies for lack of knowledge for information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint.

9.      Anchor admits the allegations contained in Paragraph 9 of the Complaint.

10.     Anchor states that the amount in controversy for damages it has suffered as a result of CBAM's actions or omissions exceeds $75,000 exclusive of interest and costs.  Anchor further admits that CBAM has alleged an amount in controversy sufficient to invoke the jurisdiction of this Court, but denies that it is indebted to CBAM in any amount.

11.     Paragraph 11 of the Complaint contains a legal conclusion to which no response is required.  To the extent a response is required, Anchor admits that this Court has subject matter jurisdiction over this matter.

12.     Paragraph 12 of the Complaint contains a legal conclusion to which no response is required.

32809087.1

## BACKGROUND

13.     Anchor admits that it supplied certain assemblies to CBAM.  Anchor denies for lack of knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 13 of the Complaint.

14.     Anchor lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

## The Supply Agreement

15.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document that it refers to as a purchase order.  Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms of that document.  Anchor denies the remaining allegations contained in this paragraph as untrue.

16.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document that it refers to as a purchase order.  Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms of that document.  Anchor denies the remaining allegations contained in this paragraph as untrue.

17.      Anchor states Paragraph 17 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Anchor denies those allegations contained in Paragraph 17 of the Complaint as alleged.

18.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms.  Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the

3

remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

19.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms.  Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

20.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms.  Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

21.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms.  Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor

22.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms.  Anchor denies as untrue all allegations contained in this paragraph that are

32809087.1

contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

23.    Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms.  Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

24.    Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms.  Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

25.    Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms.  Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

26.    Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as

CBAM's terms. Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents. Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

27.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms. Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents. Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

28.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms. Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents. Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

29.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms. Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents. Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

32809087.1

30.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms.  Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

31.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms.  Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

32.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms.  Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

33.     Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms.  Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the

32809087.1

remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

34. Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms. Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents. Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

35. Anchor admits that CBAM has attached as Exhibit A to its complaint a document it refers to as its purchase order, and Exhibit B to its complaint a document that it refers to as CBAM's terms. Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents. Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the purchase order and terms against Anchor.

36. Paragraph 36 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, denies the allegations contained in Paragraph 36 of the Complaint as alleged.

**The Bailment Agreement**

37. Anchor states that it received 15 tool and die sets, most of which were defective and prevented Anchor from producing parts in the manner contemplated by the parties. The condition of the tool and die sets were a material breach of CBAM's obligations to Anchor. Anchor denies for lack of knowledge for information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 37 of the Complaint.

8

38.     Anchor admits that CBAM has attached as Exhibit C to its complaint a document it refers to as the bailment agreement.   Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the bailment agreement against Anchor.

39.     Anchor admits that CBAM has attached as Exhibit C to its complaint a document it refers to as the bailment agreement.   Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the bailment agreement against Anchor.

40.     Anchor admits that CBAM has attached as Exhibit C to its complaint a document it refers to as the bailment agreement.   Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the bailment agreement against Anchor.

41.     Anchor admits that CBAM has attached as Exhibit C to its complaint a document it refers to as the bailment agreement.   Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the bailment agreement against Anchor.

42.     Anchor admits that CBAM has attached as Exhibit C to its complaint a document it refers to as the bailment agreement.   Anchor denies as untrue all allegations contained in this paragraph that are contrary or inconsistent with the terms contained in those documents.  Anchor

further denies the remaining allegations contained in this paragraph as untrue, including the application and enforceability of the bailment agreement against Anchor.

43. Anchor denies the allegations contained in Paragraph 43 of the Complaint.

44. Anchor admits that it had discussions with CBAM regarding certain parts, but states that, if the parts were unsatisfactory, it was the result of the defective tooling supplied by CBAM. Anchor denies the remaining allegations contained in Paragraph 44 of the Complaint.

45. Paragraph 45 contains legal conclusions to which no response is required. To the extent a response is required, Anchor denies the allegations contained in Paragraph 45 of the Complaint.

46. Anchor states that it and CBAM had discussions about mutual termination of the parties' relationship as a result of the defective tooling provided by CBAM that was used to produce automotive parts. Anchor denies the remaining allegations contained in Paragraph 46 of the Complaint.

47. Anchor states that it and CBAM had discussions about mutual termination of the parties' relationship as a result of the defective tooling provided by CBAM that was used to produce automotive parts. As to the referenced August 31, 2022 letter, CBAM failed to attach that letter to its Complaint and therefore Anchor is not able to admit or deny the allegations regarding that letter, but rather refers to that letter for its content and meaning. Anchor denies the remaining allegations contained in Paragraph 47 of the Complaint.

48. Anchor states that it would produce certain parts while CBAM lined up a new supplier, that CBAM would pay an increase in price for these certain parts as a result of issues caused by the defective tooling provided to Anchor by CBAM, and that CBAM would pay the increased prices and all existing accounts receivable when CBAM removed the tooling from

32809087.1

Anchor's facility.  CBAM failed and has refused to pay the agreed amounts, but still took the tooling.  Anchor denies the remaining allegations contained in Paragraph 48 of the Complaint.

49.     Anchor denies the allegations contained in Paragraph 49 of the Complaint.

50.     Anchor denies the allegations contained in Paragraph 50 of the Complaint.

51.     The document referenced as Exhibit D in Paragraph 51 of the Complaint speaks for itself.  Paragraph 51 contains legal conclusions to which no response is required.  To the extent a response is required, Anchor states that it would produce parts while CBAM lined up a new supplier, that CBAM would pay an increase in price for the parts as a result of issues caused by the defective tooling provided to Anchor by CBAM, and that CBAM would pay the increased prices and all existing accounts receivable when CBAM removed the tooling from Anchor's facility.  CBAM failed and has refused to pay the amounts agreed to by the parties, but still took the tooling.  Anchor denies the remaining allegations contained in Paragraph 51 of the Complaint.

52.     Anchor admits that CBAM has attached an email as Exhibit E and a document titled purchase order as Exhibit F to its compliant, but refers to those documents for their content and meaning.  In further answer, Anchor admits that CBAM agreed to pay higher prices due to CBAM providing Anchor with defective tooling.  Anchor denies the remaining allegations contained in Paragraph 52 of the Complaint.

53.     Anchor denies the allegations contained in Paragraph 53 of the Complaint.

54.     Anchor admits that CBAM demanded the release of certain tooling.  That tooling has since been released to CBAM.

55.     Anchor states that CBAM is required to pay amounts agreed to by the parties at which time Anchor will allow CBAM to take possession of the tool and die set, as agreed to by

11

the parties.   Anchor denies the remaining allegations contained in Paragraph 55 of the Complaint.

56.     Anchor denies the allegations contained in Paragraph 56 of the Complaint.

57.     Anchor denies the allegations contained in Paragraph 57 of the Complaint.

58.     Anchor denies the allegations contained in Paragraph 58 of the Complaint.

## COUNT 1 – BREACH OF CONTRACT (BAILMENT AGREEMENT)

59.     Anchor incorporates into this Paragraph 59 as if fully restated the foregoing objections and responses set forth herein.

60.     Anchor denies the allegations contained in Paragraph 60 of the Complaint.

61.     Anchor denies the allegations contained in Paragraph 61 of the Complaint.

62.     Anchor denies the allegations contained in Paragraph 62 of the Complaint.

63.     Anchor denies the allegations contained in Paragraph 63 of the Complaint, including the *ad damnum* clause inserted below Paragraph 63 of the Complaint.

## COUNT 2 – REPLEVIN PURSUANT TO R.C. 2737.02

64.     Anchor incorporates into this Paragraph 64 as if fully restated the foregoing objections and responses set forth herein.

65.     Anchor denies the allegations contained in Paragraph 65 of the Complaint.

66.     Anchor admits that, in late 2019, CBAM provided it with defective tooling in connection with the parties' relationship.  Anchor denies the remaining allegations contained in Paragraph 66 of the Complaint as alleged.

67.     Anchor denies the allegations contained in Paragraph 67 of the Complaint.

68.     Anchor denies the allegations contained in Paragraph 68 of the Complaint, including the *ad damnum* clause inserted below Paragraph 68 of the Complaint.

32809087.1

## COUNT 3 – INJUNCTIVE RELIEF

69.     Anchor incorporates into this Paragraph 69 as if fully restated the foregoing objections and responses set forth herein.

70.     Anchor denies the allegations contained in Paragraph 70 of the Complaint.

71.     Anchor denies the allegations contained in Paragraph 71 of the Complaint.

72.     Anchor denies the allegations contained in Paragraph 72 of the Complaint.

73.     Anchor denies the allegations contained in Paragraph 73 of the Complaint.

74.     Anchor denies the allegations contained in Paragraph 74 of the Complaint.

75.     Anchor denies the allegations contained in Paragraph 75 of the Complaint.

76.     Anchor denies the allegations contained in Paragraph 76 of the Complaint.

77.     Anchor denies the allegations contained in Paragraph 77 of the Complaint.

78.     Anchor denies the allegations contained in Paragraph 78 of the Complaint.

79.     Anchor denies the allegations contained in Paragraph 79 of the Complaint.

80.     Anchor denies the allegations contained in Paragraph 80 of the Complaint, including the *ad damnum* clause inserted below Paragraph 80 of the Complaint.

## COUNT 4 – SPECIFIC PERFORMANCE

81.     Anchor incorporates into this Paragraph 81 as if fully restated the foregoing objections and responses set forth herein.

82.     Anchor denies the allegations contained in Paragraph 82 of the Complaint.

83.     Anchor denies the allegations contained in Paragraph 83 of the Complaint.

84.     Anchor denies the allegations contained in Paragraph 84 of the Complaint.

85.     Anchor denies the allegations contained in Paragraph 85 of the Complaint.

86.     Anchor denies the allegations contained in Paragraph 86 of the Complaint.

87.     Anchor denies the allegations contained in Paragraph 87 of the Complaint.

88.     Anchor denies the allegations contained in Paragraph 88 of the Complaint, including the *ad damnum* clause inserted below Paragraph 88 of the Complaint.

### COUNT 5 – DECLARATORY RELIEF

89.     Anchor incorporates into this Paragraph 89 as if fully restated the foregoing objections and responses set forth herein.

90.     Anchor denies the allegations contained in Paragraph 90 of the Complaint.

91.     Anchor denies the allegations contained in Paragraph 91 of the Complaint.

92.     Anchor denies the allegations contained in Paragraph 92 of the Complaint, including the *ad damnum* clause inserted below Paragraph 92 of the Complaint.

### COUNT 6 – COMMON LAW CONVERSION AND CIVIL THEFT PURSUANT TO R.C. 2307.60(A)(1)

93.     Anchor incorporates into this Paragraph 93 as if fully restated the foregoing objections and responses set forth herein.

94.     Anchor denies the allegations contained in Paragraph 94 of the Complaint.

95.     Anchor denies the allegations contained in Paragraph 95 of the Complaint.

96.     Anchor denies the allegations contained in Paragraph 96 of the Complaint.

97.     Anchor denies the allegations contained in Paragraph 97 of the Complaint.

98.     Anchor denies the allegations contained in Paragraph 98 of the Complaint.

99.     Anchor denies the allegations contained in Paragraph 99 of the Complaint.

100.    Anchor denies the allegations contained in Paragraph 100 of the Complaint, including the *ad damnum* clause inserted below Paragraph 100 of the Complaint.

### COUNT 7 –   BREACH OF CONTRACT (SUPPLY AGREEMENT)

101.     Anchor incorporates into this Paragraph 101 as if fully restated the foregoing objections and responses set forth herein.

102.     Anchor denies the allegations contained in Paragraph 102 of the Complaint.

103.     Anchor denies the allegations contained in Paragraph 103 of the Complaint.

104.     Anchor denies the allegations contained in Paragraph 104 of the Complaint.

105.     Anchor denies the allegations contained in Paragraph 105 of the Complaint, including the *ad damnum* clause and section titled Relief Requested inserted below Paragraph 100 of the Complaint.

## <u>AFFIRMATIVE DEFENSES</u>

1.     The Complaint fails, either in whole or in part, to state a claim upon which relief can be granted.

2.     CBAM has failed to mitigate its damages, if any.

3.     CBAM's claims are barred by its actions and conduct that constitutes a waiver of its claims.

4.     CBAM is estopped from asserting its claims against Anchor.

5.     CBAM's claims are barred by the doctrine of laches.

6.     CBAM's claims are barred for improper venue.

7.     CBAM's claims and any claimed liability or damages are eliminated and/or limited by the terms of agreements between CBAM and Anchor.

8.     CBAM's claims and any claimed liability or damages are eliminated and/or limited by the doctrines of frustration of purpose and/or supervening impossibility/impracticability.

32809087.1

9.      CBAM's claims are or may be barred by the statute of frauds.

10.     CBAM's claims are or may be barred by the doctrines of payment, release, satisfaction or discharge.

11.     CBAM's claims are or may be barred by through accord and satisfaction.

12.     CBAM's claims are or may be barred through its own actions or inactions.

13.     CBAM's claims are or may be barred through the actions or inactions of third parties.

14.     CBAM's claims are or may be barred for failure to preserve material evidence.

15.     CBAM's claims are barred because CBAM committed the first material breach of the parties' contract.

16.     CBAM's claims are or may be barred by the doctrine of waiver and/or latches and/or estoppel.

17.     CBAM's claims are barred because it spoliated evidence by virtue of re-fabricating or otherwise modifying tooling that is the subject of this lawsuit after CBAM removed the tooling from Anchor's facilities.

18.     CBAM's claims are or may be barred by the applicable statutory or contractual statute of limitations.

19.     CBAM's claims are or may be barred by improper venue.

20.     Anchor reserves the right to modify its affirmative and other defenses and/or add such other defenses that may become known through the course of its investigation and discovery in this civil action.

## JURY DEMAND

Pursuant to Fed.R.Civ.P. 38, Defendant Anchor Tool & Die Co., d/b/a Anchor Manufacturing Group, Inc., hereby demands a jury on all issues so triable to a jury.

Respectfully submitted,

/s/ Adam C. Smith
ADAM C. SMITH (0087720)
McDonald Hopkins LLC
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114
Telephone:  (216) 348-5400
Fax:          (216) 348-5474
E-mail:acsmith@mcdonaldhopkins.com

John E. Benko (P58874) (*admitted pro hac vice*)
MCDONALD HOPKINS PLC
39533 Woodward Avenue, Suite 318
Bloomfield Hills, MI  48304
Telephone:  (248) 646-5070
Fax:          (248) 646-5075 (Fax)
E-mail: jbenko@mcdonaldhopkins.com

*Defendant/Counter-Plaintiff, Anchor Tool & Die Co., d/b/a Anchor Manufacturing Group, Inc.*

32809087.1

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARADA INDUSTRIES, INC., D/B/A COSMA BODY ASSEMBLY MICHIGAN, | ) ) ) | CASE NO. 1:22-cv-2333 |
| Plaintiff, | ) ) | **COUNTERCLAIMS OF** |
| | ) | **DEFENDANT ANCHOR TOOL &** |
| v. | ) | **DIE CO., D/B/A ANCHOR** |
| | ) | **MANUFACTURING GROUP, INC.** |
| ANCHOR TOOL & DIE CO., D/B/A ANCHOR MANUFACTURING GROUP, INC., | ) ) ) ) | |
| Defendant. | ) | |

Defendant/Counter-Plaintiff, Anchor Tool & Die Co., d/b/a Anchor Manufacturing Group, Inc. ("Anchor"), and for its Counterclaim against Plaintiff/Counter-Defendant, Marada Industries, Inc., d/b/a Cosma Body Assembly Michigan ("Plaintiff" or "CBAM") (Anchor and CBAM will be referred to as the "Parties), states as follows:

**PARTIES, JURISDICTION, VENUE**

1.      Anchor is an Ohio corporation with its principal place of business located in Cleveland, Ohio.

2.      Upon information and belief, CBAM is a Michigan corporation with its principal place of business located in New Hudson, Michigan.

3.      Anchor files this counterclaim pursuant to Fed. R. Civ P. 13(a) and/or Fed. R. Civ. P. 13(b).

**GENERAL ALLEGATIONS**

4.      CBAM is a Tier 1 automotive supplier supplying automotive frame assemblies to original equipment manufacturers (OEMs), including to General Motors Co. ("General Motors").

5.     Anchor is a supplier of metal stampings, welded assemblies, fabricated parts and tooling with expertise in manufacturing across multiple industries, including the automotive industry.

6.     CBAM sourced Anchor as a supplier to provide certain frame assembly automotive parts (the "Parts") used in connection with automotive frames supplied to General Motors.

7.     On December 30, 2019, Plaintiff issued a blanket purchase order (No. 101403) to Anchor for the Parts (the "2019 Purchase Order").  **Exhibit 1**.

8.     The 2019 Purchase Order also expressly incorporated the Purchase Order Terms and Conditions (the "Terms and Conditions"), attached hereto as **Exhibit 2.**  The 2019 Purchase Order and applicable Terms and Conditions will be referred to, collectively, as the "2019 Agreement."

9.     The 2019 Agreement was binding "for the length of the production life of the applicable original equipment manufacturer ("OEM") vehicle program for which [CBAM] intends to incorporate the Goods . . . ." **Exhibit 2**, ¶ 2(a).

10.    The Purchase Order additionally specified that payment was due to Anchor, "2nd DAY 2nd MONTH," meaning on the second day of the second month following receipt of an invoice.  **Exhibit 1**.

11.    The Terms and Conditions also provided that CBAM could supply its own tooling and that "[a]ll materials, supplies and services to be manufactured, produced or provided in conjunction with this Order must be in strict accordance with the specifications set forth in this Order . . . ."  **Exhibit 2**, ¶ 17(c).

12.     CBAM supplied the tooling necessary to manufacture the Parts under the 2019 Agreement, which consisted of 15 die sets (the "Tooling").

13.     CBAM directed Anchor to use the Tooling it was providing to Anchor.

14.     Upon information and belief, prior to entering into the 2019 Agreement, the Tooling was located at and transferred from Matcor-Matsu, another supplier to CBAM.

15.     Additionally, independent of the Tooling, Anchor spent considerable resources investing in other necessary capital to begin production of the Parts prior to manufacturing the Parts under the 2019 Agreement.

16.     At the beginning of the Parties' relationship, CBAM delivered the required Tooling to produce the Parts to Anchor and Anchor began manufacturing the Parts in the quantities CBAM specified in the releases.

17.     From the very start of manufacturing the Parts, however, Anchor had issues with the Tooling supplied by CBAM because the Tooling was defective.

18.     Anchor learned that Matcor-Matsu also had significant issues with Tooling because it was defective.

19.     Anchor also learned that CBAM had the Tooling re-fabricated or otherwise modified between the time the Tooling left Matcor-Matsu and when the Tooling was delivered to Anchor.

20.     The changes made to the Tooling after it left Matcor-Matsu did not fix the problems with the Tooling.

21.     As a result of the defective Tooling supplied by CBAM, Anchor experienced issues including but not limited to: material breaking out of the carrier due to the tooling design; CAD data not matching the actual parts produced; tools breaking during production; excess scrap

20

buildup; tools causing damage to the Parts, including splits and burring; and tools generally being unstable to produce the Parts.

22.     Anchor regularly informed CBAM that the Tooling it supplied was defective and needed repairs and/or replacement.  On several occasions, CBAM visited Anchor's facilities during which visits CBAM observed and admitted to the defective nature of the Tooling.

23.     CBAM refused to provide the resources necessary to either permanently fix or replace the Tooling.

24.     As a result of the Tooling issues, Anchor experienced considerable downtime and expense in refurbishing and correcting the deficient Tooling supplied by CBAM and the issues it caused.  Anchor also suffered damages associated with scrapping significant material as a result of the defective nature of the Tooling.

25.     Anchor later learned that, upon information and belief, Matcor-Matsu also had similar issues with the Tooling, prior to it being transferred to Anchor.

26.     Initially, due to the relatively low volume of Parts requested by CBAM at the beginning of the relationship, Anchor was able to produce the Parts in the quantities specified in CBAM's releases despite the considerable issues and defects with the Tooling.

27.     Due to the relatively low volume of Parts in the releases, Anchor had time to repair the Tooling and/or correct any quality issues in the Parts.

28.     In approximately the summer of 2022, however, CBAM increased the number of Parts Anchor was to produce under the 2019 Agreement.

29.      Due to the increased volume, Anchor experienced significant delays and increased costs to correct the defective Tooling and Parts the Tooling produced.  Ultimately, the

defective Tooling prevented Anchor from producing the Parts as it otherwise would have been able to produce the Parts had the Tooling been without defects.

30.     At the same time, CBAM claimed that certain Parts supplied by Anchor were defective and/or Anchor shipped fewer parts CBAM specified in its releases.

31.     Anchor denied the legitimacy of CBAM's claims and specifically that Anchor was the cause of any defective Parts.

32.     In fact, to the extent any defective Parts were shipped or delayed, those issues were caused by the defects with the Tooling supplied by CBAM.

33.     Eventually, due to the increased costs and time associated with dealing with the defective Tooling, Anchor requested a price increase from CBAM or suggested that CBAM again transition supply to another supplier.

34.     In or around October 2022, CBAM and Anchor came to an agreement to both transition supply of the Parts, as well as increase prices on a number of the Parts.

35.     In an email dated October 25, 2022, Anchor documented its discussions CBAM regarding the price increase, agreed to assist CBAM with recovering the price increase from General Motors, and again stated that "these increases are a result of the die conditions Anchor has been dealing with since the arrival of the tools from another supplier."  **Exhibit 3**.

36.     In an email dated October 27, 2022, CBAM agreed to "grant the increase request to be paid retroactively to 10/1/22" and that its agreement "is predicated based on Anchor providing written documentation for the increase request and their position to stop supply to Magna CBAM without the increase with an effective date of 10/1/22."  **Exhibit 4**.

37.     CBAM then worked with Anchor to draft the stop-ship notice Anchor sent to CBAM, in an effort to recover the price increase from General Motors.  In fact, CBAM provided

the initial draft of the stop-ship letter.  CBAM also was engaged in revising the stop-ship letter several times.

38.     Throughout these discussions, Anchor reiterated that its stop-ship notice and demand for a price increase was due to the defective Tooling supplied by CBAM.

39.     On October 28, 2022, Anchor sent the signed stop-ship letter to CBAM.  **Exhibit 5**.

40.     Soon thereafter, on November 10, 2022, CBAM sent Anchor the revised purchase order with the required price increases (the "November 2022 Purchase Order"), which ensured continued supply of the Parts at the increased prices.  **Exhibit 6**.

41.     The email enclosing the November 2022 Purchase Order specified that all pricing was effective as of November 10, 2022; however "[r]etro payments (10/1/22-11/9/22) on Dies moving out will be made once the Dies have been exited . . . ."  **Exhibit 6**.

42.     Accordingly, CBAM agreed to pay the increased prices effective immediately, as well as pay retroactive price increases (or the delta between the old price and the new price on all prices invoiced before November 10, 2022), once CBAM began removing the Tooling from Anchor.

43.     The November 2022 Purchase Order incorporated the same Terms and Conditions as the 2019 Agreement and contains no reservation of rights.  **Exhibit 6**.  The November 2022 Purchase Order and Terms and Conditions will be referred to as the "2022 Agreement."  The 2022 Agreement and 2019 Agreement will be referred to as the "Agreements."

44.     Under the 2022 Agreement, Anchor continued to supply the Parts at the increased prices, as well as began to transition the supply of some of the Tooling to CBAM's designated alternative supplier.

45.     Despite Anchor complying with the Agreements, CBAM refused to timely pay Anchor what it was owed.

46.     Specifically, CBAM currently owes Anchor approximately $1,892,638.71 in accounts receivables outstanding, manual secondary shipments, and inventory, among other damages currently not calculated, including but not limited to all damages associated with CBAM's defective Tooling.

47.     CBAM refused to pay these amounts and accordingly, Anchor placed a lien on the Tooling under the applicable law.

48.     Instead of paying Anchor what it was due, CBAM filed the underlying complaint in this lawsuit, seeking to compel Anchor to release the Tooling prior to Anchor being paid what it is owed.

49.     To date, in breach of the Agreements, CBAM has refused to pay Anchor what it is owed under the Agreements.

## <u>COUNT I – BREACH OF CONTRACT</u>

50.     Anchor realleges and incorporates the allegations in the preceding paragraphs as if fully restated herein.

51.     The Agreements constitute binding and valid contracts between Anchor and CBAM.

52.     Anchor has fully performed all of its obligations under the Agreements.

53.     The Agreements expressly incorporate the Terms and Conditions.

54.     The Agreements are clear on their face that CBAM is required to pay Anchor's invoices on the second day of the second month after receipt.

55.    CBAM breached the Agreements by failing to pay for Parts and other amounts owed under the Agreements.

56.    As a direct and proximate result of CBAM's material breach of the Contract, Anchor has suffered damages in the amount of approximately $1,892,638.71.

57.    In addition, the Terms and Conditions, which were incorporated into the Agreements, specify that "[a]ll materials, supplies and services to be manufactured, produced or provided in conjunction with this Order must be in strict accordance with the specifications set forth in this Order . . . ."  **Exhibit 2**, ¶ 17(c).

58.    The Tooling supplied by CBAM and that CBAM directed Anchor to use was not fit to manufacture the Parts specified in the Agreements.

59.    Accordingly, CBAM breached the Agreements by providing Anchor with defective tooling.

60.    CBAM's breach of the Agreements with respect to supplying defective Tooling caused Anchor to incur substantial damages, including increased labor costs, material costs, and repair costs, among other damages, associated with fixing the Tooling and all resulting issues.

WHEREFORE, Anchor requests this Court grant judgment in its favor, award Anchor its costs and attorneys' fees, and award such other relief this Court deems equitable and just under the circumstances.

## COUNT II – UNJUST ENRICHMENT

61.    Anchor realleges and incorporates the allegations in the preceding paragraphs as if fully restated herein.

62.    CBAM received the benefit of receiving parts for which it has not paid.

63.     CBAM received the benefit of Anchor expending considerable time and money correcting the many issues caused by the defective Tooling supplied by CBAM.

64.     CBAM's failure to pay has resulted in an inequity to Anchor in that it has incurred substantial damages associated with correcting the defective Tooling and for the Parts produced for CBAM.

WHEREFORE, Anchor requests this Court grant judgment in its favor, award Anchor its costs and attorneys' fees, and award such other relief this Court deems equitable and just under the circumstances.

Dated: November 2, 2023

Respectfully submitted,

/s/ Adam C. Smith
ADAM C. SMITH (0087720)
McDonald Hopkins LLC
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114
Telephone:  (216) 348-5400
Fax:          (216) 348-5474
E-mail:acsmith@mcdonaldhopkins.com

John E. Benko (P58874) (*admitted pro hac vice*)
MCDONALD HOPKINS PLC
39533 Woodward Avenue, Suite 318
Bloomfield Hills, MI  48304
Telephone:  (248) 646-5070
Fax:          (248) 646-5075 (Fax)
E-mail:  jbenko@mcdonaldhopkins.com

*Counsel for Defendant Anchor Tool & Die Co., d/b/a Anchor Manufacturing Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was served on November 2, 2023 via electronic mail and through the Court's CM/ECF system upon all parties registered to receive notice through the CM/ECF system.

/s/ Adam C. Smith_____
ADAM C. SMITH (0087720)
*Defendant/Counter-Plaintiff, Anchor Tool & Die Co., d/b/a Anchor Manufacturing Group, Inc.*

32809087.1